## J. S. EURY ET AL.

### v.

## JACOB T. MERRILL ET AL.

*Club — Copartnership—Chancery — Jurisdiction of—Real Property—
Improvements by Wrong-doer—Costs.*

1. A court of chancery has power to wind up the affairs of a club and
order the property sold, where it has been dissolved in substance by the dis-
sentions of the parties, and where the objects for which the same was formed
were impossible of further attainment.

2. A wrong-doer may not place improvements on real estate and charge
his co-tenants or the owner of the title with the same, nor can he sue for
them, or hold a lien on the land, or personal recovery of the land in a suit in
ejectment or otherwise, requiring payment before recovery is allowed, nor
can he wrongfully improve a person out of his title. But where in a
case of partition and a sale of the land upon which the improvements are
placed, the proceeds of the land are increased by reason of the improve-
ments, a court of equity may allow and pay the wrong-doer the amount
which the fund has been increased by reason thereof.

3. While a court of equity has ordinarily full control over the question of
costs, there are exceptions to the rule, and it would be error in a partition
suit to require one of the parties to pay the entire costs.

[Opinion filed December 7, 1891.]

APPEAL from the Circuit Court of Kankakee County; the
Hon. N. J. PILSBURY, Judge, presiding.

Mr. F. K. WHEELER, for appellants.

Mr. T. P. BONFIELD, for appellees.

LACEY, P. J.   In 1878 twenty residents of the city of La-
fayette, Ind., formed themselves into an association in the
nature of a copartnership, under the title of the Lafayette
Fishing Club, for social enjoyment and fishing and hunting at
Waldron, in the county of Kankakee and State of Illinois.
They leased a tract of land on the bank of the Kankakee

river at Waldron of one C. R. Beardsly for the term of five years, with the right to extend the lease for a term of fifteen years in all, and were to pay to the lessor as rent the sum of $5 per year. Immediately thereafter they constructed a club house on the grounds, with store rooms, boats and other accommodations suitable to accommodate its members, costing $600. The club adopted by-laws and were accustomed during the summer season to make frequent excursions to the club house, it being the custom to register with the secretary of the club the names of the persons who should occupy the club house at various times. It was provided that the secretary and treasurer should have control of the house. The club was harmonious until 1887. Beardsly, the lessor, soon after the lease was executed, was tendered his $5 for one year's rent, whereupon he stated to the secretary and treasurer of the club that if they would pay the taxes on the building as personal property that he would exact no rent; that he had enjoyed the hospitality of the club at various times and thought that was sufficient compensation. In 1887, S. D. Phillips, one of the appellees, and the complainant in the cross-bill in the court below, had some difficulty with Cumberson and Wagner, two of the appellants, about the payment of some fuel money, amounting to fifty cents, and declined to pay it. Considerable ill feeling arose over the matter, and in the month of February, 1888, Phillips, who was then president of the club, unknown to any of the other members of the association, came to Waldron and purchased the ground of the lessor, upon which the building was situated, in fee. Then he and the landlord determined to forfeit the lease for the non-payment of .rent. They then went upon the ground and read the lease in the presence of the building and themselves and called for rent, and no one coming forward with the money, Phillips took immediate possession as sole owner. The other members of the company were not aware of these proceedings, and the company had become reduced to eight members. Phillips then built an addition to the club house and repaired the same at the cost of $200. At an annual meeting of the club in April following, Phillips did not

attend but sent his attorney there, who informed the club that
Phillips was then the sole owner of the property and would
control it. Shortly afterward some of the members of the
club broke into the house, Phillips having locked it up.
Phillips then procured an injunction on bill filed in the Kan-
kakee Circuit Court and enjoined every member of the club
from occupying it, claiming title to the building under his
attempted forfeiture of the lease, Phillips remaining in sole
possession of the house until September, 1888, following. At
that term of court the injunction was dissolved by Phillips by
leave of court. Shortly after the September term of said
court, Merrill, one of the appellees, purchased the interest of
James Alexander, one of the original members of the club,
for $50, and on January 28, 1889, he filed a bill for a dissolu-
tion of the association, to appoint a receiver, and for a sale
of the property on account of the dissensions in the club,
making all the owners of the club house defendants. At the
same term of court Phillips filed a cross-bill setting up about
the same state of facts and claiming a lien out of the proceeds
of the property for the value of the improvements he had put
upon it. On a hearing after answers being filed to the cross-
bill and the evidence taken, the court gave an interlocutory
decree in favor of Merrill, and holding that Phillips should
be reimbursed to the extent that his improvements had
enhanced the value of the property, if any, and referred the
case to the master and ordered the property sold. The mas-
ter afterward sold the property at public auction for $600,
and on reference the master found that Phillips was entitled
to $60 by reason of the enhancement of the club property.
Upon exceptions being filed however, by both parties, the
court ordered, first, that the costs of the suit should be paid
out of the proceeds of the sale; second, that Phillips have
$120 for his improvements put upon the property; and third,
that the remainder of the money should be divided among the
members, including Merrill, *pro rata*. From this decree this
appeal is taken by appellants and it is insisted by appellants'
counsel in their behalf, that the complainant had no standing
in a court of equity, and that the bill was brought to assist

Phillips. It is insisted that according to the articles of the association, no person not a member of the club had a right to buy the interest of any member without the consent of the club. We think, however, there being nothing in the articles of the association to prevent such a sale, that Merrill had a right to purchase Alexander's interest. We are of the opinion also that considering the dissensions and ill feeling existing between the members of the club the objects and purposes had failed, and that there could be no good reason for longer holding the organization together. We think a court of equity has power to wind up the affairs of a copartnership and order the property sold, where it has been dissolved as this was, in substance, by the dissensions of the parties; and where the objects for which the club was formed were impossible of further attainment. The other members of the club are not interested in what Merrill paid for Alexander's interest in the club. That was a matter wholly between him and Alexander. Nor are they concerned about the motive of Merrill in purchasing, whether for speculation or otherwise. It is enough that he has procured an interest in the club property. It is also insisted that the court erred in giving Phillips any relief under his cross-bill. It is insisted that Phillips was a wrong-doer in putting these improvements on the club property without authority, and in his own wrong. We are cited to various authorities in support of that doctrine. Story's Equity Jurisprudence, 65; Chambers v. Jones, 72 Ill. 281; Field v. Leiter, 117 Ill. 352. In the former case, cited from the Illinois Reports, in speaking of the rights of one of the parties who made the improvements, the court said: "The improvements made by him may be referred to his interest in the common property. And if a division shall be made, the equity between the parties may be adjusted in that proceeding. We are not aware that one tenant in common can make improvements on the common property and charge his co-tenants even ratably with their value. If he makes improvements on the common estate he does so at his peril. In many instances it would be equitable that he should have the right to remove the same, if it could be done without permanent injury to the realty."

The last case cited we do not regard as applicable. We understand the law to be that a wrong-doer may not place improvements on real estate and charge his co-tenants or the owner of the title with the same, or that he can sue for them or hold a lien on the land or personal recovery of the land in a suit in ejectment or otherwise, requiring payment before recovery is allowed, nor that he may wrongfully improve a person out of his title. But where, in a case of partition and a sale of the land upon which the improvements are placed, the proceeds of the land are increased by reason of the improvements, a court of equity may allow and pay the wrong-doer the amount which the fund has been increased by reason thereof. Certainly the owner of the title is not injured by this, and the person who has improved the estate in his own wrong is simply allowed to take his money back; in other words, it is not considered forfeited. Any other rule would appear inequitable. There is only one more question remaining to be considered and that is the question of costs. Ordinarily a court of equity has full control over the question of costs, but there are exceptions to that rule. It would be error in a partition suit to require one of the parties to pay the entire costs, and a decree of that kind would be reversed by the Appellate Court, as held in Le Moyne v. Harding, 132 Ill. p. 23. The court says: "We are unable to agree with the court below as to the liability of Le Moyne for all the costs. Those occasioned by his unfounded claim for taxes he should pay, but the ordinary costs of the partition should be paid by both parties." The cause was remanded with directions as to modifying decree as to costs. Carrying out the doctrine that a person improving an estate in his own wrong may not do so as to incommode or cause expense to the holder of the title, it would seem to follow, equitably, that Phillips ought not to cast the burden of proving up his own claim and litigating it at the expense of the owners of the property improved. Therefore, he should be required to pay all the costs occasioned by the cross-bill and incidents thereto, testimony, master's expense, etc. For the reasons above given, the decree of the court below is affirmed, except as to the

order concerning the costs, which is reversed as to that, and the cause remanded with directions to the court below to first charge the $600 with all the costs of the partition suit except the costs made on the cross-bill, and then give to appellee Phillips one-fifth of the sum remaining, and that Phillips, out of that sum so given him, pay the costs occasioned by the cross-bill and incidents thereto, and if any deficiency remains, charge Phillips with the remaining costs of the cross-bill. And it is further ordered that the costs of this appeal be charged to appellee Phillips.

<em>Decree reversed in part and affirmed in part.</em>